FILED
United States Court of Appeals
Tenth Circuit

**February 9, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HENRY P. HYLTON,

Defendant - Appellant.

No. 09-3043
(D. Ct. No. 2:07-CR_20085-JWL-1)
(D. Kan. )

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **ANDERSON**, and **BRISCOE**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has

determined unanimously that oral argument would not be of material assistance in the

determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The

case is therefore ordered submitted without oral argument.

Defendant-appellant Henry P. Hylton appeals his 48-month sentence imposed after

he pleaded guilty to escaping from custody in violation of 18 U.S.C. § 751(a). We have

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we AFFIRM.

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

On June 27, 2007, Mr. Hylton was residing at the Grossman Community Corrections Center, a halfway house in Leavenworth, Kansas.  That day, he signed out of the center to go to work.  He did not return.  In October, Mr. Hylton turned himself in to authorities and later pleaded guilty without a plea agreement to escaping from custody.  *See* 18 U.S.C. § 751(a).

The presentence report ("PSR") noted that the base offense level for a violation of § 751(a) was 13.  *See* 2008 United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") § 2P1.1(a)(1).  The PSR also recommended a two-level decrease for acceptance of responsibility, *see id.* § 3E1.1(a), which combined with Mr. Hylton's criminal history category V produced an advisory Guidelines range of 24–30 months' imprisonment.

The PSR, however, characterized Mr. Hylton's escape conviction as a felony crime of violence, which, taken with two prior convictions for bank robbery, qualified him as a career offender under U.S.S.G. § 4B1.1.  Application of § 4B1.1 increased Mr. Hylton's total offense level to 15 and his criminal history score to VI.  This produced a Guidelines range of 41–51 months.

Prior to sentencing, the government sought an above-Guidelines sentence of 60 months—the statutory maximum for the conviction.  The government emphasized Mr. Hylton's extensive criminal background, as well as its determination that Mr. Hylton had robbed a local grocery store in Lenexa, Kansas within a day of his escape from custody.

Charges had never been brought in the robbery because the clerk had moved to Germany and would be unavailable at trial.

At sentencing, the government called as a witness the police officer who had investigated the robbery. During his investigation, he learned that around 5:00 a.m. on June 28, 2007, $242.91 had been taken from a clerk at the grocery register. He found a pair of glasses that the robber had left behind; DNA evidence from the eyeglasses matched Mr. Hylton's DNA. The officer also testified that a store employee saw the robber leave in a small dark blue or black car with a Kansas temporary license plate with the number 150069. Mr. Hylton's car was a black Infiniti with a temporary license plate with the number 150061. A video surveillance tape, which the government also introduced at the sentencing hearing, showed a tall, African-American male at the store during the relevant timeframe. Mr. Hylton is 6'4" and African-American.

In determining the applicable Guidelines range, the court concluded that Mr. Hylton's escape conviction did not qualify as a crime of violence and thus did not apply the career-offender provision of § 4B1.1. The court, however, agreed with the government and found by a preponderance of the evidence that Mr. Hylton committed the June 28 grocery store robbery. The court then varied upward from the advisory Guidelines range of 24–30 months and imposed a 48-month sentence. The court gave two reasons for the variance. First, it found that Mr. Hylton's criminal history score of V underrepresented the seriousness of his criminal history. Second, the court concluded that the grocery store robbery necessitated an increased sentence. On appeal, Mr. Hylton

argues that (1) the court improperly admitted evidence regarding the grocery store robbery at the sentencing hearing; (2) using the robbery to justify an upward variance was inappropriate because it was already considered in calculating the Guidelines sentence; and (3) the court did not give proper weight to evidence he presented at sentencing regarding his success with drug-treatment programs.

## II. DISCUSSION

A.      Standard of Review

We review sentences for reasonableness under a deferential abuse-of-discretion standard. *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009). Reasonableness review contains two components, procedural and substantive. *Id.* A sentence is procedurally reasonable if it was imposed using the proper methodology. *See id.* Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Substantive reasonableness involves "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in § 3553(a)." *Sayad*, 589 F.3d at 1116 (quotations and alterations omitted). Where, as here, the district court has varied from the applicable Guidelines range, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*,

552 U.S. at 51.

B.      Evidence at the Sentencing Hearing

Mr. Hylton first contends that the police officer's testimony that a grocery store employee told him that the robber left in a dark-colored vehicle with a license plate of 150069 was improperly admitted as unreliable hearsay. "[S]entencing courts may consider hearsay evidence provided that the evidence has sufficient indicia of reliability." *United States v. Dazey*, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005). The district court correctly recognized this rule, explaining that the court was generally skeptical of hearsay testimony from witnesses with a motive to pass culpability onto the defendant. The court, however, noted that this was not such a case and deemed the officer's testimony credible in light of the other circumstantial evidence of Mr. Hylton's guilt. On appeal, Mr. Hylton provides no basis to question the reliability of the officer, emphasizing only that the government provided no reason why the grocery store employee could not have testified at the hearing. This is insufficient to demonstrate that the court should have disregarded the officer's testimony. In short, the court properly adjudged the reliability of the testimony and properly considered it at the hearing.

Next, Mr. Hylton argues that the court erred in admitting the video surveillance tape. He contends that its poor quality and brevity could be misleading and that he was not the only tall, African-American male at the grocery store that day. The district court, however, was clearly not misled by the tape because it did not consider the tape as conclusive evidence of Mr. Hylton's guilt. Instead, the court simply noted that the tape

merely supported the government's theory and was consistent with the other evidence provided at the hearing. There was no error in admitting the tape.

## C.     Reasonableness of the Sentence Imposed

### 1.     *Double-Counting the Robbery*

Because the PSR found that Mr. Hylton had committed the grocery store robbery upon his escape from custody, the PSR did not apply U.S.S.G. § 2P1.1(b)(3), which provides for a four-level specific-offense downward adjustment if the defendant's escape is from a non-secure community corrections center or halfway house, "*[p]rovided*, however, that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more." According to Mr. Hylton, by considering the grocery robbery as a basis for the upward departure, the district court wrongfully punished him twice for a crime he may not have committed and without the protections afforded by a trial.

To the extent Mr. Hylton contends that the district court could not use the same facts to apply (or, in this case, to refuse to apply) a particular Guideline provision in addition to support an upward variance, we disagree. "[D]istrict courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory Guidelines range." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1222 (10th Cir. 2008). "Accordingly, a district court does not commit procedural error when it relies on the same facts to support both an enhancement and a variance, so long as it articulates specifically

the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation." *Id.* at 1222–23 (quotations and alterations omitted). "This explanation need not be overly detailed." *Id.* at 1223 (quotations omitted). In this case, the district court recognized that the robbery had rendered Mr. Hylton ineligible for the § 2P1.1(b)(3) reduction but also explained that had he been convicted of the offense in state court, he would have faced an even more severe repercussion of at least ten years in state prison. The court thus concluded that Mr. Hylton "paid a price . . . for that offense, but I don't think that is in keeping with the seriousness of the offense." In our view, this adequately explained why Mr. Hylton's situation differed from the ordinary situation encompassed by the Guidelines. The district court thus did not procedurally err in using the robbery to support the variance.

Moreover, Mr. Hylton was not entitled to have a jury determine whether he committed the grocery store robbery before the district court could use that fact at sentencing. It is well-established that under a discretionary Guidelines regime, a court may find facts relevant to sentencing by a preponderance of the evidence. *United States v. Hall*, 473 F.3d 1295, 1312 (10th Cir. 2007).

2.     *Failing to Give Proper Weight to Mitigating Evidence*

Finally, Mr. Hylton argues that the variance is unreasonable because the district court failed to give proper weight to testimony at sentencing regarding his participation in work therapy at a Salvation Army Rehabilitation Center after his escape from the halfway house. We disagree. Although the court did not impose the sentence Mr. Hylton

requested, the court did account for this testimony in rejecting the government's request for a 60-month sentence (the statutory maximum) and instead imposing a 48-month sentence. Giving due deference, as we must, to the district court's decision that the § 3553(a) factors justify the variance, *see Sayad*, 589 F.3d at 1116, we cannot say that the court abused its discretion in selecting Mr. Hylton's particular sentence.

### III.  CONCLUSION

For the foregoing reasons, Mr. Hylton's sentence is AFFIRMED.


ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge